**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 26-188-DLB**

**ALBERTO RAFAEL ORTIZ MOLINA**                                   **PETITIONER**


**v.**                          **MEMORANDUM OPINION AND ORDER**


**MARKWAYNE MULLIN, et al.**                                        **RESPONDENTS**


* * * * * * * * * *

## I.     INTRODUCTION

This matter is before the Court on Petitioner Alberto Rafael Ortiz Molina's Petition for Writ of Habeas Corpus (Doc. # 1).  Respondents[1] having filed their Responses[2] (Docs. # 4 and 5), and Petitioner having filed his Reply (Doc. # 7), this matter is now ripe for review.  For the following reasons, the Court will **grant** the Petition.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Ortiz Molina is a native and citizen of Venezuela.  (Doc. # 1 ¶ 1).  He presented himself at the San Ysidro, California port of entry on October 14, 2024.  (Doc. # 1-3).  On October 15, 2024, Petitioner was served a Notice to Appear ("NTA") and paroled into the United States for a period of two years, with his parole set to automatically expire on October 13, 2026.  (Docs. # 1-3 and 1-4).  In accordance with his conditions of

---

[1]     Petitioner files this action against Markwayne Mullin, Secretary, US Department of Homeland Security ("DHS"); Todd Blanche, Attorney General; Michael Zervas, Louisville Field Office Director, US Immigration and Customs Enforcement ("ICE"); and Jason Maydak, Jailer, Boone County Jail ("Respondents").  (Doc. # 1 at 1).

[2]     Respondent Maydak filed a separate response, arguing that he is not Petitioner's immediate custodian.  (Doc. # 4).

1

parole, Petitioner timely filed for asylum and withholding of removal.  (Doc. # 1 ¶ 2).  On January 13, 2026, Petitioner attended a routine, check-in appointment with ICE, where he was then served with an I-200 Warrant for Arrest of Alien.  (*Id*. ¶ 3; *see also* Doc. # 5-3).  He has been detained at the Boone County Jail in Burlington, Kentucky ever since. (Doc. # 1 ¶ 4).   On February 4, 2026 Petitioner had a custody redetermination hearing before the Memphis Immigration Court, which the Court denied due to lack of jurisdiction. (*Id*. ¶ 18).

On February 27, 2026, Petitioner filed a Petition through his "next friend" Karla Marilu Franco Mena.  *Ortiz Molina v. Maydak*, No. 2:26-cv-97-SCM, 2026 WL 915498, at *1 (E.D. Ky. Apr. 3, 2026).  That Petition was denied on April 3, 2026 on the grounds that no relief could be granted because the Petition was filed by an individual who was neither himself nor an attorney who is authorized to practice in this Court.  (*Id*. at *2).  The Court encouraged Petitioner to file a new petition either in his own name or with retained counsel.  (*Id*.).  Petitioner did so, and on April 29, 2026, Ortiz Molina, by and through counsel, filed the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Docs. # 1 and 2).  In his Petition, Ortiz Molina argues that he is being unlawfully detained at the Boone County Jail in Burlington, Kentucky and requests that the Court order his immediate release or, in the alternative, a constitutionally adequate bond hearing.  (*Id*. at 15).  On April 30, 2026, the Court directed Respondents to respond to the Petition.  (Doc. # 2).  Respondents having filed their Responses (Docs. # 4 and 5), and Petitioner having filed his Reply (Doc. # 7), this matter is ripe for the Court's review.

2

## III.   ANALYSIS

Ortiz Molina brings this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.  At its core, habeas provides "a remedy for unlawful executive detention" *Munaf v. Geren*, 553 U.S. 674, 693 (2008), available to "every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).  The "typical remedy for such detention is, of course, release." *Munaf*, 553 U.S. at 693.  Such relief "may be granted by the . . . district courts . . . within their respective jurisdictions."  28 U.S.C. § 2241(a).  The Supreme Court has recognized that habeas relief extends to noncitizens. *See Rasul v. Bush*, 542 U.S. 466, 483 (2004) ("[Alien] Petitioners contend that they are being held in federal custody in violation of the laws of the United States . . . Section 2241, by its terms, requires nothing more.").  Enacted in 1952, the Immigration and Nationality Act ("INA") consolidated previous immigration and nationality laws and now contains "many of the most important provisions of immigration law."   U.S. Citizenship and Immigration Services, *Immigration and Nationality Act* (July 10, 2019), https://www.uscis.gov/lawsandpolicy/legislation/immigrationandnationalityact#:~:text=The%20Immigration%20and%20Nationality%20Act,the%20U.S.%20House%20of%20Representatives.

Petitioner argues that Respondents violated, and continue to violate, his Fifth Amendment rights when they detained him without properly revoking his parole.  (Doc. # 1 ¶ 26).  Both parties agree that Petitioner was paroled for a period of two years, with an automatic expiration date of October 13, 2026.  (*Id*. ¶ 15).  Additionally, both parties concede that on May 11, 2026, nearly four months after Petitioner had been detained, ICE terminated Petitioner's parole.  (*See* Doc. # 5-4).  However, Respondents argue that

3

"upon termination of his parole, Petitioner was and continues to be an arriving alien subject to mandatory detention." (Doc. # 5 at 4). Petitioner argues that he is not an arriving alien, but even if he was, "Respondents are acknowledging that they improperly detained the Petitioner from the date of his arrest on January 13, 2026 until they terminated his parole on May 11, 2026[, and that these] fourth (sic) months of illegal detention alone would be sufficient for this Court to grant his immediate release." (Doc. # 7 at 3-4).

### A.      Proper Respondents

Before turning to Petitioner's substantive argument, the Court will address Respondent Maydak's contention that he is not a suitable respondent. (Doc. # 4 at 2). "[T]he federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over the petitioner.'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242). The Supreme Court has held that "[w]henever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement." *Id.* at 447. Similarly, this Court has held that, where an immigration detainee files a petition for writ of habeas corpus, the jailer is a proper respondent. *M.T.B. v. Byers*, No. 2:24-cv-082-DCR, 2024 WL 3881843, at *1 (E.D. Ky. Aug. 20, 2024). Indeed, "as the person who has 'day-to-day control over the facility in which [Tunjano Campos] is being detained,' Maydak is [Tunjano Campos's] custodian." *Id.* (quoting *Roman v. Ashcroft*, 340 F.3d 314, 319 (6th Cir. 2003)). Petitioner is presently detained at the Boone County Jail. (Doc. # 1 ¶ 17; Doc. # 4 at 1). Maydak, as the elected Jailer, "oversee[s] and operate[s]" the Boone County

4

Jail. (*Id*.).  Therefore, Maydak is a proper respondent to Ortiz Molina's Petition.  *See*

*Padilla*, 542 U.S. at 447; *Byers*, 2024 WL 3881843, at *1.  Accordingly, the Court will deny

Maydak's request to dismiss him as a respondent.  Having concluded that Maydak is a

proper respondent, the Court turns to the substantive arguments Petitioner raises in his

Petition.

 **B.** **Termination of Parole**

  ***1. Petitioner's detention prior to May 11, 2026 Notice***

The implementing regulation governing the parole of aliens into the United States

is codified at 8 C.F.R. § 212.5.  This section of the Code of Federal Regulations outlines

who can and cannot be given parole, the circumstances that allow for the grant of parole,

the conditions of parole, and—most importantly for this case—the termination of parole.

8 C.F.R § 212.5(a)–(e).  Parole of aliens may be terminated either automatically or upon

written notice from the appropriate officials.  *Id*. § 212.5(e).  Parole terminates

automatically without notice when the noncitizen either departs the United States or when

the parole period expires.  *Id*. § 212.5(e)(1).  Conversely, if the purpose of parole is

accomplished or an officer finds the humanitarian reasons nor public benefit warrants the

noncitizen's continued presence in the United States, "parole shall be terminated upon

*written notice* to the alien and he or she shall be restored to the status that he or she had

at the time of parole."  *Id*. § 223.5(e)(2)(i) (emphasis added).  Put another way, "[u]nder

the governing regulation, [§ 1182(d)(5)(A)] parole may be terminated only if the purpose

of parole is accomplished, or humanitarian reasons and the public benefit no longer

warrant parole."  *Loaiza Arias v. LaRose*, No. 3:25-cv-02595-BTM-MMP, 2025 WL

3295385, at *3 (S.D. Cal. Nov. 25, 2025).

The Court concludes that Petitioner's parole was not adequately revoked when he was detained by ICE on January 13, 2026. To start, the Court finds that neither requirement for automatic termination of parole occurred at the time Petitioner was detained. Obviously, Petitioner was still present in the United States when he was arrested. Further, at the time he was arrested by ICE, Petitioner still had eight (8) months before his parole was set to automatically expire. Because Petitioner's parole did not automatically terminate, Respondents need to show they provided Petitioner with notice of the termination of his parole at the time he was originally detained.[3] They have failed to do so. The only document Petitioner received at the time of his arrest was the I-200 Warrant for Arrest of Alien dated January 13, 2026. (*See* Doc. # 1-3). This Warrant did not put Petitioner on notice that his parole status was being terminated. First, the Warrant did not mention his parole or include any language at all that explicitly states that his parole status was being terminated. Second, given that Petitioner contends that he complied with ICE and DHS's directives while his asylum application was pending (and remains pending), he certainly would not have known his parole status was in jeopardy without explicit, written notice at the time of his arrest.

Moreover, the record does not reflect that he received any charging document that would have put him on notice of the termination of his parole with the Warrant. A "charging document" is defined as "the written instrument which initiates a proceeding

---

[3]   Any argument that the May 11, 2026 Notice would retroactively cure an unlawful arrest into a lawful one is rejected. *See Saengphet v. Noem*, 815 F. Supp. 3d 1142, 1152-53 (S.D. Cal. 2025) ("After-the-fact determinations in an attempt to justify a noncitizen's re-detention cannot cure the Government's blatant procedural errors."); *Rujano v. Lynch*, No. 1:25-cv-1631, 2026 WL 18618, at *4 (W.D. Mich. Jan. 2, 2026) ("Respondents do not explain, and the Court fails to discern, how a determination made *after* Petitioner's arrest could show that ICE made any individualized determination about Petitioner's parole *prior* to Petitioners arrest") (emphasis in original).

before an Immigration Judge." 8 C.F.R. § 244.1. Listed as examples of charging documents are Notices to Appear, Notices of Referral to an Immigration Judge, and Notices of Intention to Rescind and Request for Hearing by an Alien. *Id*. Neither party alleges that Petitioner received such a document when he was arrested. *(See generally* Docs. # 1 and 8). Further, the C.F.R. provides three specific examples of charging documents. 8 C.F.R. § 244.1. I-200 Arrest Warrants—immigration arrest warrants that order ICE officers to arrest an alleged alien—are not on the list. If these documents were intended to have the same effect as a charging document, they would be listed as a charging document by the regulation. Therefore, because the I-200 Warrant was short on any actionable language and ICE provided no additional charging document, the Court finds that the January 13, 2026 Warrant did not provide effective written notice of the termination of Petitioner's parole, in violation of the 8 U.S.C. § 1182(d)(5)(A). *See Rassul v. Field Office Director*, No. 25-232-DLB, 2026 WL 834737, at *5 (E.D. Ky. Mar. 26, 2026) ("There is nothing in the record that allows the Court to conclude that DHS made a 'case-by-case assessment' required to terminate [the petitioner's] parole."). Accordingly, Petitioner was still on parole when he was arrested and detained by ICE on January 13, 2026.

Because Petitioner was still on parole when he was detained, he "'was in custody in violation of the laws of the United States.'" *Darwich v. Kemerling*, No. 1:25-cv-1162, 2026 WL 170801, at *2 (M.D.N.C. Jan. 22, 2026) (quoting 28 U.S.C. 2241(c)(3)). This Court, along with many others, has found that detaining someone without properly terminating their parole is a violation of the noncitizen's Due Process rights. *See Rassul*, 2026 WL 834737, at *6 ("Rassul's detention violates the due process rights afforded to

7

him by the Fifth Amendment[.]"); *Darwich*, 2026 WL 170801, at *5 ("Arresting someone on parole who remains in exclusion proceedings without terminating his parole is illegal and in violation of the laws of the United States."); *Rujano*, 2026 WL 18618, at *5 ("[T]here is no indication that Respondents followed the applicable statutory and regulatory requirements to revoke or terminate Petitioner's parole. If Respondents did not follow those requirements, then they did not have the authority to arrest and detain Petitioner[.]"); *Saengphet*, 815 F. Supp. 3d at 1148 (finding a "clear violation of Petitioner's due process rights" because petitioner was "substantially prejudiced" when the government "failed to comply with its regulations that govern the re-detention of noncitizens."). Accordingly, Petitioner's Fifth Amendment due process rights were violated when he was detained while still on parole.

### 2. *Petitioner's detention following the May 11, 2026 Notice*

While it is clear to the Court that Petitioner's original detention was a violation of his due process rights, the Court must address whether his continued detention, specifically, his detention after the May 11, 2026 Notice, is a continued violation of his due process rights. Petitioner argues that his due process rights continue to be violated because the Notice does not "identify a single reason or change in circumstance such that there were previously urgent humanitarian reasons or significant public benefit justifying the Petitioner's parole that no longer exist." (Doc. # 7 at 4). Accordingly, Petitioner argues that "Respondent[s] improperly terminated [his] parole . . . and [he] is unlawfully detained because of that improper termination." (*Id*. at 6).

As district courts all over the country have held, "the parole termination statute and regulation require DHS to make an 'individualized review' that the purposes of a particular

8

noncitizen's parole have been met or that the statutorily-provided reasons for parole no longer exist." *Darwich*, 2026 WL 170801, at *7; s*ee also Villegas-Gonzales v. Lynch*, No. 1:25-cv-1795, 2025 WL 3767939, at *5 (W.D. Mich. Dec. 31, 2025) ("[D]istrict courts that have addressed the termination of § 1182(d)(5)(A) parole 'have found that just as a grant of parole requires an individualized review, revocation of parole requires a case-by-base assessment to comply with the statute[.]'" (quoting *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 146 (W.D.N.Y. 2025))); *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1138 (D. Or. 2025) ("Common sense suggests … that parole given only on a case-by-case basis is to be terminated on such a basis." (citations omitted)).

In determining what counts as an adequate "individualized review" the Court turns to *Darwich*, a Middle District of North Carolina case, with facts that largely mirror the facts of the case before this Court.  There, the petitioner was detained by ICE while on parole, and it was not until a few days after his detention that a notice was issued purporting to terminate the petitioner's parole.  2026 WL 170801, at *2.  In determining whether the petitioner's due process rights had been violated, the court first concluded that the respondents had violated the petitioner's rights when they took him into custody without first terminating his parole.  *Id*. at *5.  Next, the court discussed whether the respondents continued to violate the petitioner's rights despite the notice issued after his arrest.  The court noted that "[w]hile there [was] evidence that a government official terminated [the petitioner's] parole after his arrest, this purported termination did not comply with the statutory requirements."  *Id*. at *7.  The Court specifically noted that the notice, which merely stated that "[n]either urgent humanitarian reasons nor significant public benefit warrant [the petitioner's] continued parole at this time" was "a 'form termination' that

9

quoted current law and its termination paragraph did not address anything specific to [the petitioner]." *Id*. at *2-7. Accordingly, the Court concluded, "[t]he government has presented no evidence beyond the conclusory termination letter explaining why the purposes of [the petitioner's] parole had been served. In the absence of such an individualized determination, his ongoing detention remains illegal." *Id*.

Other district courts, have held similarly. *See Mata Velasquez*, 794 F. Supp. 3d at 146 ("There is no indication in the record that the government conducted [a case-by-case] analysis here. On the contrary, the letter [the petitioner] received merely stated summarily that DHS had 'revoked [his] parole'"); *Saengphet*, 815 F. Supp. 3d at 1151 ("Respondents attempt to invoke regulatory authority but fail to do so because [the notice] is conclusory"); *Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 777 (D. Minn. Sep. 3, 2025) ("Petitioner must be told *what* circumstances had changed or *why* there was now a significant likelihood of removal in order to meaningfully respond"); *Y-Z-L-H*, 792 F. Supp. 3d at 1145 ("[W]ritten notice is a *necessary* but not *sufficient* condition for compliance with [8 C.F.R. § 212(d)(5)]); *Id*. at 1146 (finding that an email that stated DHS was terminating the noncitizen's parole was "legally insufficient to meet the statutory and regulatory requirements, even though it cited those provisions and invoked the word discretion."); *Darwich*, 2026 WL 170801, at *7 (finding that the notice was merely "a 'form termination' that quoted current law and its termination paragraph did not address anything specific to [the petitioner.]").

While not binding, the Court finds the above case law persuasive. Here, the May 11, 2026 Notice to Petitioner states, in its entirety,

> On October 15, 2024 the Department of Homeland Security, in its discretion, issued you parole and released you from custody pursuant to INA § 212(d)(5).
>
> Neither urgent humanitarian reasons nor significant public benefit warrant your continued parole at this time. As an authorized delegated official in according with Title 8, Code of Federal Regulations, sections 212.5(a); 212.5(e)(2)(i); 1212.5 your parole is hereby terminated, effective the date of this letter.

(Doc. # 5-4).  Much like the *Darwich* case, there is nothing in this Notice that reflects that any "individualized review" or "case-by-case assessment" took place.  Rather, the Notice uses boilerplate language, is overly vague and conclusory, and fails to specify the circumstances that justify the revocation of Petitioner's parole.  To mirror the language of § 212.5(e) and simply say that there is neither an urgent humanitarian reasons, nor significant public benefit—especially when Petitioner's asylum claim is still pending—is not sufficient.  In fact, the use of such boilerplate language, in conjunction with the fact that the Notice was issued after Petitioner had been detained, gives this Court "every indication that the after-the-fact termination was made without consideration of [Petitioner's] individual situation."  *Darwich*, 2026 WL 170801, at *7.

"Government agencies are required to follow their own regulations."  *Saengphet*, 815 F. Supp. 3d at 1152; *see also Gabriel v. Bondi*, No. 2025 WL 3443584, at *5 (D. Minn. Dec. 1, 2025) ("Respondents nonetheless must comply with the requirements of the governing statute and regulation" before revoking a noncitizen's parole); *Y-Z-L-H*, 792 F. Supp. 3d at 1146 ("Respondents may not 'simply disregard rules that [were] still on the books'" (citations omitted)).  Here, Respondents did not properly revoke Petitioner's parole at the time he was originally detained.  For four (4) months Petitioner remained in detention in violation of his due process rights.  At no point during that time did ICE ever

purport to revoke Petitioner's parole.  It was not until Ortiz Molina filed the instant Petition, wherein he alleged that his parole was not properly revoked, did ICE issue its Notice revoking Petitioner's parole.  Specifically, Ortiz Molina filed this Petition on April 29, 2026. (Doc. # 1).  On April 30, 2026, this Court ordered Respondents to respond.  (Doc. # 2). On May 11, 2026, ICE prepared the Notice to terminate Petitioner's parole (Doc. # 5-4), the same day that the Sixth Circuit issued its decision in *Lopez-Campos v. Raycraft*.[4]  On May 12, 2026, ICE issued the Notice to Petitioner.  (Doc. # 5-4).  On May 13, 2026, Respondents filed a Motion for Extension of Time so they could "digest[] the recent 6th Circuit decision[.]"  (Doc. # 3).  However, Respondents filed their Response the very next day on May 14, 2026.  (Doc. # 5).

This timeline is troubling, and "although there is insufficient evidence for the Court to conclude so, it certainly hopes that [Ortiz Molina] filing this Petition was not the catalyst to the Government's after-the-fact attempt to comply with its own regulations." *Saengphet*, 815 F. Supp. 3d at 1152.  The Court does find, however, that there is sufficient evidence that Respondents twice failed to follow the applicable statutory requirements to revoke Petitioner's parole, to wit, once when he was originally detained without any notice whatsoever, and again when the Notice contained boilerplate language with no indication that an individualized review took place.

### C. Due Process

Because the Court has concluded that Ortiz Molina was held—and continues to be held—in violation of his parole under the INA, the Court must now determine whether his current detention violates his due process rights.

---

4        --- F.4th ---, 2026 WL 1283891 (6th Cir. May 11, 2026).

The Fifth Amendment provides, in pertinent part, that no person shall be "deprived of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. V.  The Supreme Court has repeatedly held that the Due Process Clause extends to all persons, regardless of citizenship status.  *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (quoting Trump v. J.G.G., 604 U.S. 670, 673 (2025))).  To determine whether a detainee's due process rights have been violated, courts apply a three-part balancing test to weigh (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.  *Mathews v. Eldridge*, 424 U.S. 319, 321 (1976).

It is undisputed that Ortiz Molina, having been granted parole already, has a cognizable private interest in avoiding detention.  *See Hamdi*, 542 U.S. at 531 (affirming "the fundamental nature of a citizen's right to be free from involuntary confinement by his own government without due process of law[.]").  Indeed, "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause[.]" *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects.").  Our immigration law has long recognized that noncitizens have an interest in freedom

13

from detention pending the resolution of removal proceedings.  *See Yamataya v. Fisher*, 189 U.S. 86, 101 (1903).

Second, the risk of erroneous deprivation of that interest is high if an individualized determination on Petitioner's parole never takes place before parole is revoked.  *See Edahi v. Lewis*, No. 4:25-cv-129-RGJ, 2025 WL 3466682, at *14 (W.D. Ky. Nov. 27, 2025) (holding that detention "without any individualized assessment, leads to a high risk of erroneous deprivation of an individual's liberty interest") (citation omitted); *Yao v. Almodovar*, No. 25 Civ. 9983 (PAE), 2025 WL 3653433, at *11 (S.D.N.Y. Dec. 17, 2025) (finding that ICE's "discretion-free detention of [the petitioner] abridged his rights under [8 U.S.C.] § 1226 and violated due process") (citations omitted).  To date, this Court is not aware of any sort of individualized determination on Petitioner's parole status since its initial granting.[5]  Thus, Petitioner's present detention creates a high risk of an erroneous deprivation of his liberty interest. Accordingly, the second Mathews factor favors Petitioner.

As to the third factor, Respondents have not put forth any argument whatsoever advocating for the United States' interest. The Court, on its own, concludes that the United States likely has a strong interest in governing immigration proceedings, but certainly, the "existing statutory and regulatory safeguards" which this Court discussed at length above, "serve the governmental interest in public safety."  *Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *7 (W.D. Ky. Sep. 19, 2025) (quoting *Günaydin v. Trump*, No. 25-cv-01151, 2025 WL 1459154, at *10 (D. Minn. May 21, 2025)).  Accordingly, all three

---

[5]   The Court acknowledges that Petitioner did have hearing on February 4, 2026.  However, neither party alleges that at this hearing the immigration court conducted an individualized determination on Petitioner's parole status.  If such a case-by-case determination did occur on February 4, 2026, the parties are welcome to file such a notice with this Court.

14

factors weigh in favor of Petitioner.  While Respondents are correct in stating that the Government may constitutionally detain deportable noncitizens during the pendency of removal proceedings, courts all across the country, including this Court, has found that a noncitizen's detention violates the due process rights afforded to him by the Fifth Amendment when his parole has not been properly revoked.  Here, there is no indication from the record that Petitioner's parole has properly been revoked.  Therefore, Ortiz Molina is entitled to be released from ICE custody.

## IV.      CONCLUSION

Accordingly, for the reasons stated herein, **IT IS SO ORDERED** as follows:

(1)      Ortiz Molina's Petition for Writ of Habeas Corpus (Doc. # 1) is **GRANTED**;

(2)      Respondents are **ORDERED** to **immediately release** Petitioner, subject to any conditions that existed under Petitioner's parole; and

(3)       Respondent shall file a Status Report with this Court **on or before May 27, 2026** to certify compliance with this Order.

This 20th day of May, 2026.



Signed By:

*David L. Bunning*

Chief United States District Judge

G:\Judge-DLB\DATA\ORDERS\Cov2026\26-188 MOO re Habeas Petition.docx